**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


ERICA LINDIMENT, et al.,[1]      )
                                 )
               Plaintiff(s),    )
                                 )
               v.              )      1:17cv501
                                 )
BRIDGETT JONES, et al.,      )
                                 )
               Defendants.     )


## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge on the Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application") (Docket Entry 1) filed by Erica Lindiment (the "Plaintiff") in conjunction with her pro se Complaint (Docket Entry 2) against (i) the Rockingham County Child Protective Services (the "Rockingham County CPS"), Marry [sic] Harris, Martha Meadows, Andre Chambers, Michael S. Mitchell DM, Jennifer Watkins (collectively, the "Original Defendants"), (ii) James E. Reaves ("Reaves"), Felissa H. Ferrell LCSW/Director, Stephanie Harriet, "My kids G.A.L. name unknown at this time" (id. at 2),[2] Lori Priddy, Bridgett Jones ("Jones"),

---

    1  As discussed below, it remains unclear whether Erica Lindiment pursues this action solely on her own behalf or also on behalf of certain minors.

    2  Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.  For legibility purposes, this Opinion uses standardized capitalization in all quotations from Plaintiff's materials.

"Rockingham Co. Court System" (id. at 6), Judge Christine Strayer (collectively, the "Additional Defendants"), and (iii) Beverly Smith ("Smith," and collectively with Original Defendants and Additional Defendants, the "Defendants"). The undersigned will grant the Application for the limited purpose of recommending dismissal of this action.

## IN FORMA PAUPERIS PRINCIPLES

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [i]s not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or . . . (ii) fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

As to the first of these grounds, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (some internal quotation marks omitted). In determining frivolousness, the Court may "apply common sense." Nasim, 64 F.3d at 954.

As to the second ground, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is

3

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[3]

Furthermore, federal courts possess limited jurisdiction, such that they may "exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). No presumption of jurisdiction applies, Pinkley, Inc. v. City of Frederick, Md., 191 F.3d 394, 399 (4th Cir. 1999); instead, federal courts must determine if a valid jurisdictional basis exists and "dismiss the action if no such ground appears," Bulldog Trucking, 147 F.3d at 352; see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter

---

3  Although the United States Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

4

jurisdiction on its own motion.'"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Generally, federal courts possess jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and actions involving citizens of different states, 28 U.S.C. § 1332. Facts supporting jurisdiction must appear in the complaint, Pinkley, 191 F.3d at 399, and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted). The Court may consider subject-matter jurisdiction in assessing frivolity under § 1915. See Cummings v. Rahmati, No. 1:17cv196, 2017 WL 1194364, at *1 (M.D.N.C. Mar. 30, 2017), recommendation adopted, slip op. (M.D.N.C. Apr. 20, 2017).

## BACKGROUND

In October 2016, Plaintiff initiated a lawsuit (the "Original Suit") raising substantially the same claims against Smith and Original Defendants. See Lindiment v. Smith, No. 1:16-cv-1269, Docket Entry 2 (the "Original Complaint") (M.D.N.C. Oct. 28, 2016). The Court (per United States Magistrate Judge Joi Elizabeth Peake) recommended dismissing the Original Suit "for being frivolous and for failing to state a claim upon which relief may be granted." Lindiment v. Smith, No. 1:16-cv-1269, Docket Entry 5 (the

"Recommendation") at 6 (M.D.N.C. Nov. 25, 2016). More specifically, the Recommendation advised that the domestic relations exception to federal jurisdiction, id. at 2-3, the Younger abstention doctrine, id. at 3, and the Rooker-Feldman doctrine, id., rendered frivolous Plaintiff's Original Complaint. It further concluded that, "[i]n addition to th[o]se bases for dismissal, a review of the specific allegations that Plaintiff makes as to each [d]efendant shows that she has failed to state a claim upon which relief may be granted." Id. at 4. At the conclusion of this analysis, the Recommendation observed that the dismissal should occur "without prejudice to Plaintiff pursuing whatever state law claims she may have." Id. at 6.[4]

In her "Response to Recommendation[]," Plaintiff presented certain new claims and asked for time to "rewrite and reenter these Court proceedings and the latest happenings in this suit." Lindiment v. Smith, No. 1:16-cv-1269, Docket Entry 7 (the "Objections") at 1-2 (M.D.N.C. Dec. 12, 2016). Thereafter, the Court (per United States District Judge Loretta C. Biggs) adopted the Recommendation and dismissed the Original Suit. Lindiment v. Smith, No. 1:16-cv-1269, Docket Entry 8 (the "Dismissal Order") at 1-2 (M.D.N.C. Dec. 28, 2016). In so doing, the Dismissal Order stated:

---

4 The decretal portion of the Recommendation does not include this statement. See id.

6

> To the extent that Plaintiff attempts to summarily assert
> new claims in her [O]bjections and then asks for more
> time to "rewrite and reenter" the new claims, the Court
> notes that this case is being dismissed without prejudice
> to Plaintiff filing her new claims on the proper forms
> correcting the problems noted in the Recommendation.

Id. at 1.  The Court cautioned, however, that the claims against Smith, Jones, and the specified Original Defendants expressed in the Objections "fail for the same reasons set out in the Recommendation."  Id.

On June 2, 2017, Plaintiff filed the Application and Complaint.  (See Docket Entries 1, 2.)  The following week, Plaintiff filed a "Corrections to Defendants List," which states that "Ms Felissa H. Ferrell LCSW may or may not be the person that sent the police away.  I [sic] may be Philis Conus." (Docket Entry 5 (the "Correction") at 1.)  On June 20, 2017, Plaintiff filed a supplement to the Complaint, which includes, inter alia, emails dated as of June 19, 2017, regarding Plaintiff's ongoing child custody proceedings.  (See Docket Entry 6 (the "Supplement") at 58-59.)  The Complaint, Correction, and Supplement collectively present the claims expressed in the Original Suit against Original Defendants and Smith as well as claims against Additional Defendants and Smith related to developments in Plaintiff's child custody dispute since she filed the Original Suit.  As relief for her claims, Plaintiff requests that "all files filed in Roc[kingham] Co. from the date of Sept 5 2016 to now to be dismissed. . . & or [her] kids to be removed from Roc[kingham]

Co[unty] CPS to ambulance co. where no conflict is." (Docket Entry 2 at 15.) Plaintiff further requests "[her] case to be moved from Roc[kingham] Co. & stop [sic] all court filing they have in place . . . & to put in place writs of habeas corpus returning all kids to [her]." (Id.)

## DISCUSSION

### I. Preliminary Matters

### A. Parties

Ambiguity exists regarding the identity of the purported plaintiff(s) in this action. To begin with, the Complaint's caption identifies only Erica Lindiment as a plaintiff. (See id. at 1 (listing "Erica Lindiment"); see also Docket Entry 1 at 1 (listing "Erica Sample Lindiment" in the Application's caption).)[5] Meanwhile, the Correction bears the caption "Lindiment v. Jones eta" (Docket Entry 5 at 1), and the Supplement identifies "Erica & Lindiments" as "Plaintiffs," but classifies "[her] kids" as "the witnesses" (Docket Entry 6 at 1). Finally, two sections of the Complaint identify Plaintiff's minor children as plaintiffs. (See Docket Entry 2 at 1, 7; see also Docket Entry 1 at 3 (listing

_____

    5 The Federal Rules of Civil Procedure mandate that "[t]he title of the complaint must name all the parties" to the action. Fed. R. Civ. P. 10(a). As such, technically only parties listed in the complaint's caption qualify as "properly named parties to th[e] action." Peters v. Child Protective Servs., No. 3:07cv23, 2007 WL 2287830, at *2 (W.D. Ky. Aug. 2, 2007) ("The [c]ourt will, therefore, not consider any claims brought on behalf of or against any of those persons not listed in the caption.").

minors' ages and relationship).)  Under these circumstances, it remains unclear whether Plaintiff attempts to pursue claims on behalf of her minor children.  To the extent, though, that Plaintiff seeks to present such claims, they necessarily fail.

Pursuant to this Court's Local Rules, minors may sue "only by their general or testamentary guardians within this state or by guardians ad litem appointed by this Court."  M.D.N.C. LR 17.1(a).[6] Plaintiff does not contend that she qualifies either as a general or testamentary guardian or as a court-appointed guardian ad litem for the minors.  (See Docket Entries 2, 2-1, 5, 6.)  Moreover, the record reveals no appointment of Plaintiff as the minors' guardian. (See Docket Entries dated June 2, 2017, to present.)  In addition, by naming "[her] kids G.A.L." as a defendant (Docket Entry 2 at 2), Plaintiff tacitly acknowledges that the North Carolina courts have appointed someone else the minors' guardian ad litem.  Finally, Plaintiff's allegations and exhibits regarding ongoing child custody proceedings (see, e.g., id. at 10, 13; Docket Entry 6 at 58-60) establish that North Carolina officials have not appointed her as general guardian of the minors.  See Corbett v. Lynch, 795

---

6  Under North Carolina law, a "'[g]eneral guardian' means a guardian of both the estate and the person," N.C. Gen. Stat. Ann. § 35A-1202(7), and a "testamentary guardian" signifies a guardian named in a parent's will for such parent's minor children, see N.C. Gen. Stat. Ann. §§ 35A-1224(d) & 35A-1225; see also Corbett v. Lynch, 795 S.E.2d 564, 565 (N.C. Ct. App. 2016) ("In 2015, Mr. Corbett died, leaving Max and Allison orphaned.  In his will, Mr. Corbett named Aunt and Aunt's husband as testamentary guardians for both minor children.").

S.E.2d 564 (N.C. Ct. App. 2016) (examining relationship between guardianship and custody proceedings and concluding that appointment of general guardian mooted child custody proceeding); McKoy v. McKoy, 202 N.C. App. 509, 515, 689 S.E.2d 590, 594 (2010) (explaining that "the clerk of superior court has exclusive jurisdiction over guardianship matters," including any custody matters arising after the guardian's appointment (citing decision involving "abuse, dependency, and neglect proceedings")).

Accordingly, the minors do not qualify as parties to this action, and (pro se) Plaintiff cannot assert any claims on their behalf. See M.D.N.C. LR 17.1(a); see also Shepherd v. Wellman, 313 F.3d 963, 970-71 (6th Cir. 2002) (explaining that "parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative" and affirming dismissal of minor's 42 U.S.C. § 1983 claim). Thus only Plaintiff's individual claims remain before the Court.

**B. Jurisdictional Basis**

The Complaint asserts both diversity jurisdiction, pursuant to 28 U.S.C. § 1332, and federal question jurisdiction, pursuant to 28 U.S.C. § 1331. (See Docket Entry 2 at 6.) According to the Complaint, Plaintiff and all Defendants qualify as citizens of North Carolina. (See id. at 6, 8-9; see also id. at 1, 3-5.) Under Section 1332(a), "jurisdiction does not exist unless *each*

10

defendant is a citizen of a different State from *each* plaintiff."
Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978)
(emphasis in original).  Because Plaintiff and Defendants do not
satisfy this standard, the Court lacks diversity jurisdiction over
this matter.

In regard to federal question jurisdiction, the Complaint
states: "The moorish science treaties/I challenged jurisdiction 14
Amendment" (Docket Entry 2 at 6).  (See also id. at 9 (detailing
"Statement of Claim" as "When I challenged jurisdiction they did
not stop to prove they had jurisdiction in my case. & they are
hurting my kids"), 10 (alleging that a defendant "violated our
rights by . . . calling CPS . . . where he had no jurisdiction of
Moorish Americans").)[7]  The statutory basis for federal claims

_____

7  The United States does "not recognize[] the Moorish Nation
as a sovereign state," Bey v. Meacham, No. 4:16 cv 744, 2016 WL
1704358, at *2 (N.D. Ohio Apr. 27, 2016) (collecting cases), appeal
dismissed, No. 16-3489 (6th Cir. Mar. 3, 2017), and thus "[t]he
moorish science treaties" cannot support federal-question
jurisdiction, see 28 U.S.C. § 1331 (limiting jurisdiction to
"actions arising under the Constitution, laws, or treaties of the
United States").  Moreover, any claims based on alleged Moorish
Nation membership qualify as frivolous. See, e.g., Hemingway-El v.
City of High Point, No. 1:09cv711, 2012 WL 1313312, at *2 (M.D.N.C.
Apr. 17, 2012) (recommending § 1915(e)(2) dismissal of claims
"based on the patently frivolous and thoroughly discredited notion
that [the plaintiff] has special status in the United States as a
function of her association with some 'Moorish' group"),
recommendation adopted, 2012 WL 1867113 (M.D.N.C. May 22, 2012);
El-Bey v. City of Charlotte, No. 3:11-cv-0131, 2011 WL 4757653, at
*5-6 (W.D.N.C. May 17, 2011) (collecting cases and "recommend[ing]
that [the p]laintiff's claims relying on his alleged membership in
the 'Washitaw Empire' [or 'Moorish Nation'] should be summarily
dismissed"), recommendation adopted, 2011 WL 4755560 (W.D.N.C. Oct.
7, 2011), aff'd, 465 F. App'x 236 (4th Cir. 2012).

11

involving constitutional violations by state actors appears in 42 U.S.C. § 1983.  See id.; see also Cummings, 2017 WL 1194364, at *2 n.3.  "To state a claim for relief in an action brought under § 1983, [Plaintiff] must establish that [she] w[as] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  As a general matter, "Section 1983 provides no remedy for common law torts," Bailey v. Prince George's Cty., 34 F. Supp. 2d 1025, 1027 (D. Md. 1999) (citing Street v. Surdyka, 492 F.2d 368, 371 (4th Cir. 1974)), or for conduct by state agencies, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989).

**C. Res Judicata Effect of Original Suit**

The Original Suit also presented Section 1983 claims against Original Defendants, Jones, and Smith.  See Lindiment v. Smith, No. 1:16-cv-1269, Docket Entry 3 at 1 (M.D.N.C. Oct. 28, 2016) (listing "42 USC [§] 1983" as the statutory basis for the Original Suit).  However, to limit unnecessary costs, promote the finality of judgments, and provide closure to litigants, the doctrine of res judicata bars attempts to relitigate claims adjudicated in a previous suit between the same parties.  See Brown v. Felsen, 442 U.S. 127, 131 (1979); Montana v. United States, 440 U.S. 147, 153 (1979).  The doctrine also bars claims in the second suit that could have been raised in the first proceeding.  See Keith v.

<u>Aldridge</u>, 900 F.2d 736, 740 (4th Cir. 1990) (observing that "the appropriate inquiry is whether the new claim arises out of same transaction or series of transactions as the claim resolved by the prior judgment" (internal quotation marks omitted)); <u>Harnett v. Billman</u>, 800 F.2d 1308, 1314 (4th Cir. 1986) ("Res judicata precludes the litigation by the plaintiff in a subsequent action of claims with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." (brackets in original; internal quotation marks omitted)).

Application of res judicata generally requires satisfaction of three conditions: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." <u>Jones v. SEC</u>, 115 F.3d 1173, 1178 (4th Cir. 1997) (internal quotation marks omitted). A dismissal pursuant to § 1915(e) does not qualify as an adjudication on the merits, and therefore "does not prejudice the filing of a paid complaint making the same allegations." <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992). However, unless done with leave to cure the identified deficiencies, a § 1915(e) dismissal "ha[s] a res judicata effect on frivolousness determinations for future *in forma pauperis* petitions." <u>Id.</u> (collecting cases); <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003) (explaining that "§ 1915 dismissals with prejudice would have a *res judicata* effect on future *in forma*

*pauperis* petitions" (emphasis omitted)); Waller v. Groose, 38 F.3d 1007, 1008 (8th Cir. 1994) ("hold[ing] that the § 1915([e]) dismissal of [the petitioner's] first claim has res judicata effect and establishes that [the petitioner's] second, identical claim is frivolous for § 1915([e]) purposes").[8]

The Court dismissed the Original Suit "without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for being frivolous and for failing to state a claim upon which relief may be granted." Lindiment, Docket Entry 8 at 2. Given its adoption of the Recommendation and resolution of Plaintiff's Objections, the Court appears to have intended this dismissal to operate without prejudice to Plaintiff pursuing any state claims and any new claims expressed in the Objections, but with prejudice to Plaintiff relitigating the claims expressed in her Original Complaint. See Lindiment, Docket Entries 5, 7-8. As such, the Original Complaint's dismissal "could . . . have a res judicata effect on frivolousness determinations for [Plaintiff's current] *in forma pauperis* petition[]." Denton, 504 U.S. at 34.

With the possible exception of claims against Rockingham County CPS, the Complaint and Original Complaint present substantially the same claims against Original Defendants. (Compare Docket Entry 2, with Lindiment, Docket Entry 2.) The

---

8  Prior to 1996, § 1915(e) appeared at § 1915(d).  See Hughes, 350 F.3d at 1162 n.3.

Original Complaint contains no specific allegations against Rockingham County CPS. See generally Lindiment, Docket Entry 2. This absence of "any factual allegations against Rockingham County CPS" meant that the Original Complaint "fail[ed] to state a claim upon which relief may be granted against [Rockingham County CPS]." Lindiment, Docket Entry 5 at 6. The Complaint likewise fails to assert factual allegations against Rockingham County CPS, stating only that it "violated our right to equal protection & will not follow the law." (Docket Entry 2 at 18.)[9] This lack of specificity complicates the res judicata analysis.[10] Nevertheless, because Plaintiff's claims in the Original Suit and the instant Complaint arise from the same underlying events — namely her child custody dispute — Plaintiff's claim against Rockingham County CPS also remains subject to res judicata. See Petros v. City of

---

9 In a separate paragraph on the same page as the allegations against Rockingham County CPS, the Complaint presents allegations against an unidentified "they." (See id. at 18 ("[T]hey don't understand our body. . . . [T]hey are forcing there [sic] religious freedoms on us.").) The Complaint generally details its allegations against individual Defendants in separate paragraphs. (See, e.g., id. at 10-14; see also id. at 26-28 (recounting different allegations against "Ms. Smith").) Given this structure, the religious-freedom allegations do not appear aimed specifically at Rockingham County CPS.

10 It also means that the Complaint fails to state a claim on which relief may be granted against Rockingham County CPS. See Iqbal, 556 U.S. at 678 (explaining that a complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to state a valid claim, and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Wheeling, No. 5:05cv140, 2006 WL 1705911, at *2-3 (N.D. W. Va. June 16, 2006) (explaining that "this action has arisen out of the same controversy as [the plaintiff's] previous two actions," concluding that res judicata barred claim, and dismissing action with prejudice pursuant to § 1915(e)).

Under these circumstances, the Original Suit's "dismissal provides res judicata effect and establishes that [Plaintiff's claims against Original Defendants] are frivolous for 28 U.S.C. § 1915(e) purposes." Pack v. David, Civ. Action No. 07-2004, 2007 WL 4947819, at *1 (D. Md. Aug. 1, 2007). Moreover, Plaintiff's claims against Original Defendants fail for the reasons expressed in the Recommendation, see generally Lindiment, Docket Entry 5, including that the domestic relations exception and Younger abstention doctrine render these claims frivolous, see id. at 2-3. Accordingly, the Court should dismiss with prejudice Plaintiff's claims against Original Defendants as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). See also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (explaining that "Section 1915([e]) is aimed at the dismissal of 'frivolous, malicious, or repetitive lawsuits'" and concluding that "[t]he district court did not abuse its discretion when it rejected [the plaintiff's] attempt to relitigate th[e same] claim [from a prior suit]" (emphasis in original) (quoting Neitzke, 490 U.S. at 324)).

## II. Remaining Claims

As with Original Defendants, the Complaint, Correction, and Supplement present claims against Smith and Additional Defendants involving Plaintiff's ongoing child custody proceedings. (See Docket Entry 2 at 10-14, 19, 25-28.) As an initial matter, the Complaint reiterates Plaintiff's claim against Smith from the Original Complaint. (Compare Docket Entry 2 at 10, 26, with Lindiment, Docket Entry 2 at 3-4.)[11] As with the claims against Original Defendants, this claim fails under res judicata and for the reasons stated in the Recommendation, see Lindiment, Docket Entry 5 at 2-3, 6. The Complaint also contains allegations against Smith regarding conduct following the Original Suit's filing. (See, e.g., Docket Entry 2 at 19 (alleging that "[Jones] & Miss Smith asked for me to be moved back to Roc[kingham] Co after 1st suit was dismissed"); id. at 27 (alleging that Smith "subpoena [sic] Ms[.] Jone[s] & Mr. Chambers as witnesses because she knew I had them in the last law suit").) Even assuming that res judicata does not bar such claim, it qualifies as frivolous under the domestic relations exception and Younger abstention doctrine, as discussed below.

---

11 The Complaint does not repeat the Original Complaint's allegations against Jones. (Compare Docket Entry 2 at 10, 19, with Lindiment, Docket Entry 2 at 2-3.)

## A. Domestic Relations Exception

"Domestic relations cases are traditionally matters within the exclusive purview of state, not federal, courts." Aldmyr Sys., Inc. v. Friedman, 215 F. Supp. 3d 440, 454-55 (D. Md. 2016), aff'd, 679 F. App'x 254 (4th Cir. 2017), petition for cert. filed, __ U.S. __ (July 24, 2017) (No. 17-144). As such, the so-called "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). The domestic relations exception applies in both federal-question and diversity cases. See Johnson v. Byrd, No. 1:16cv1052, 2016 WL 6839410, at *9-13 (M.D.N.C. Nov. 21, 2016) (analyzing domestic relations exception and concluding it applied to, inter alia, the plaintiff's § 1983 claim), recommendation adopted, slip op. (M.D.N.C. Jan. 20, 2017), appeal dismissed, No. 17-1305, 2017 WL 3098162, __ F. App'x __ (4th Cir. July 21, 2017).

Plaintiff's claims against Additional Defendants and Smith arise from her ongoing state child custody proceedings. (See generally Docket Entries 2, 6.) For instance, Plaintiff asserts that (i) "Lori Priddy is in violation of our rights by trying to prolong case by add [sic] thing in case plan when [Plaintiff] was not in the room" (Docket Entry 2 at 12); (ii) "Judge Christine Strayer violated our rights by taking visitation from me" and "also didn't prove jurisdiction & favor Ms[.] Smith[] in court with no

proof" (id. at 13); and (iii) Smith "enters things i[n] court like voluntary paternity acknowledgment when [Plaintiff] disagreed" (id. at 26) and "gave [Plaintiff's] baby dad visits with the kids to hurt [Plaintiff]" (id. at 27). Throughout the instant litigation, Plaintiff has explicitly acknowledged the relationship between this federal action and her ongoing state-court custody proceedings. (See Docket Entry 3 at 1 (identifying "related case(s)" as "16JA96-99"); Docket Entry 6 at 1 ("Reference Case No. /About: 16JA96-99 — state court"); see also Docket Entry 2-1 at 6-14 (containing subpoenas and motions from Rockingham County District Court Case No. 16JA96-99, including Smith's "Motion for Review" regarding Plaintiff's visitation privileges).) Indeed, the relief Plaintiff seeks in this federal action explicitly involves — and attempts to circumvent — the state-court custody proceedings. (See Docket Entry 2 at 15 (requesting orders that "remove[ the kids] from Roc[kingham] Co[unty] CPS" and "return[] all kids to [Plaintiff]" as well as orders dismissing "all files filed in Roc[kingham] Co." and "stop[ping] all court filing they have in place[, including] all non-secure custody orders[,] all vision [sic] filing[,] . . . all vision [sic] filing for kids to see abuser father[,] all foster care placement[, and] all court order mandates").)

The record further indicates that Plaintiff seeks to use this federal action as leverage in her state-court custody proceedings. For instance, the Supplement contains an email exchange between

Reaves and Plaintiff on June 19, 2017, related to the custody proceedings. (See Docket Entry 6 at 58-59.) In this exchange, Plaintiff discusses the "religious belief[ f]ood list" she provided to "Ms[.] Ross at RCDSS" and tells Reaves "u [sic] should b [sic] getting some paper work on me soon." (Id. at 58.) Plaintiff then states that "[she] ha[s] already add [sic] it to the law suit." (Id.) In response, Reaves writes:

> [Plaintiff]
>
> I am familiar with many of the religious dietary laws. If you have documentation I will pass it along to the agency. Is there a reason that we are just now hearing about this? If you have requested at an earlier time I had no knowledge.
>
> You mentioned adding things to the lawsuit. It was my understanding that your lawsuit in Federal District Court was dismissed. Please provide information on any other legal action relating to your child welfare case.
>
> You also indicate that you are working on setting up the assessment. It is my understanding that the agency has given you a few options. Please call and make an appointment to discus your case. Ms. Walker and I both want to help you get your children back.

(Id. at 59.) Plaintiff then states, "I do it will b [sic] in the paper u [sic] should get[.]" (Id.)

The day after this email exchange, Plaintiff filed the Supplement. (See id. at 1.) In the case caption, the Supplement provides the instant case number, the "Previous Lawsuits Case No. 1:16CV1269" and the "Reference Case No. /About: 16JA96-99 — state court." (Id.) The first two paragraphs of the Supplement reiterate claims from the Original Suit. (Compare id., with

<u>Lindiment</u>, Docket Entry 2 at 3, <u>and</u> <u>id.</u>, Docket Entry 7 at 1-2.)
The Supplement then asserts:

> It is unclean to get meat and my kids have allergies to
> the things on the food list.  Every holiday have [<u>sic</u>]
> rules of what to eat.  We are Evangelist but also follow
> Jewish & Muslim traditions.  These food list [<u>sic</u>] are
> new do [<u>sic</u>] to whats [<u>sic</u>] been going on.  The food has
> a clean date.  It might b [<u>sic</u>] 2018.

(Docket Entry 6 at 1.)  The majority of the remainder of the
Supplement contains assorted articles, bible passages, and bible
commentary regarding food and cannibalism.  (<u>See</u> <u>id.</u> at 9-46.)  The
Supplement thus appears to constitute the "paper work" that
Plaintiff states Reaves "should b[e] getting . . . soon" (<u>id.</u> at
58) regarding her state-court custody proceedings.  (<u>See</u> <u>id.</u> at 58-
59.)

Under the circumstances, "despite the superficial federal
question nature of this suit, the real purpose is plainly a
domestic relations issue that belongs to the [North Carolina] state
court.  It does not belong in federal court." <u>Aldmyr Sys.</u>, 215 F.
Supp. 3d at 458.  Therefore, the domestic relations exception
divests the Court of jurisdiction over Plaintiff's claims against
Additional Defendants and Smith, rendering those claims frivolous.
<u>See</u> <u>Johnson</u>, 2016 WL 6839410, at *13-14 (recommending dismissal of
claims involving ongoing child custody dispute as frivolous in
light of, <u>inter alia</u>, the domestic relations exception).

**B. Younger Abstention Doctrine**

In addition to custody orders, Plaintiff "would like all files filed in Roc[kingham] Co. from the date of Sept 5 2016 to now to be dismissed." (Docket Entry 2 at 15.) Plaintiff further requests that this Court move "[her] case . . . from Roc[kingham] Co. & stop all court filing they have in place." (Id.) As such, Plaintiff includes the state-court judge presiding over her custody proceedings (see id. at 13) and the "Rockingham Co. Court System" (the "State Court") (id. at 6) as defendants in this action.[12] However, abstention principles articulated in Younger v. Harris, 401 U.S. 37 (1971), preclude Plaintiff's requested injunctive relief.

"*Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." O'Neill v. Coughlan, 511 F.3d 638, 643 (6th Cir. 2008) (citing Younger, 401 U.S. at 40-41). As relevant here, Younger abstention precludes federal intrusion into ongoing state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." Sprint

---

12      It bears noting that the Complaint lacks any factual allegations against the State Court (see generally Docket Entry 2) and thus fails to state a claim on which relief can be granted against the State Court, see Iqbal, 556 U.S. at 678. Moreover, the State Court "does not qualify as a 'person' amenable to suit under Section 1983," rendering frivolous such claim. Mobley v. Foster, No. 1:17cv117, 2017 WL 1409612, at *3 (M.D.N.C. Apr. 20, 2017), recommendation adopted, slip op. (M.D.N.C. May 25, 2017).

Commc'ns, Inc. v. Jacobs, __ U.S. __, __, 134 S. Ct. 584, 588 (2013). In considering whether to apply Younger abstention in such circumstances, a federal court may consider certain "additional factors" articulated in Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423 (1982). Sprint, __ U.S. at __, 134 S. Ct. at 593 (emphasis omitted). These additional factors include whether the ongoing state proceedings "implicate important state interests" and provide "an adequate opportunity . . . to raise [federal] challenges." Middlesex, 457 U.S. at 432.

Plaintiff's allegations and exhibits establish that the child custody proceedings in State Court predate the instant action and remaining ongoing. (See, e.g., Docket Entry 2 at 13 (alleging that "Judge Christine Strayer violated our rights" through certain rulings from "Sept 2016 till now"), 15 (requesting dismissal of "all files filed in [State Court] from the date of Sept 5 2016 to now"); Docket Entry 2-1 at 6-14 (motions and subpoenas in State Court case spanning from October 2016 to April 2017); Docket Entry 6 at 61 (requesting attendance at April hearings in State Court), 58-59 (discussing, in emails on June 19, 2017, Plaintiff's ongoing child custody proceedings, including the fact that, "as [Reaves and Plaintiff] have previously discussed, the [State] Court has Ordered [Plaintiff] to participate in a Psychological Parenting Assessment," but Plaintiff has not yet "compl[ied] with the [State] Court's Order").) Moreover, Plaintiff seeks injunctive relief to

"stop all court filing" in the State Court proceedings, including "all non-secure custody orders[,] all vision [sic] filing[,] . . . all foster care placement[, and] all court order mandates." (Docket Entry 2 at 15.)  This case thus qualifies for Younger abstention.

Consideration of the Middlesex factors confirms the appropriateness of Younger abstention:

> First, Plaintiff's claims implicate important state interests as they concern an ongoing child custody matter.  See Moore v. Sims, 442 U.S. 415, 435 (1979) (noting that "[f]amily relations are a traditional area of state concern"); see also C.C.S. v. Child Protective Servs. of Orange Cty., No. 1:11CV81, 2011 WL 1325125, at *1-2 (M.D.N.C. Apr. 7, 2011) (recommending against exercising jurisdiction over the plaintiff's claims because of, inter alia, Younger abstention principles, and noting that child custody and visitation matters "implicate important state interests"), recommendation adopted, slip op. (M.D.N.C. June 6, 2011).  Second, the State Court provides a sufficient forum for Plaintiff to assert her federal rights.  See C.C.S., 2011 WL 1325125, at *2 (recognizing that state child custody proceeding afforded the plaintiff an adequate opportunity to present her federal questions).

Johnson, 2016 WL 6839410, at *9 (brackets in original). Accordingly, federal courts should abstain from adjudicating Plaintiff's claims for injunctive relief regarding her ongoing State Court custody proceedings.  See, e.g., Wattie-Bey v. Attorney Gen.'s Office, 424 F. App'x 95, 96 (3d Cir. 2011) (concluding that "Younger abstention principles dictated dismissal of the complaint . . . with regard to [the plaintiffs'] claims for prospective injunctive and declaratory relief based on alleged violations of

their constitutional rights in the ongoing state court custody proceedings"); C.C.S., 2011 WL 1325125, at *2 (recommending abstention under Younger from exercising jurisdiction over action that concerned ongoing state court child custody and visitation matters). The Court should therefore dismiss Plaintiff's claims as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). See Johnson, 2016 WL 6839410, at *7-9, *14 (concluding that Younger abstention rendered frivolous claims for injunctive and declaratory relief regarding ongoing state custody proceedings).

### III. Sealing and Redaction

The Federal Rules of Civil Procedure require redaction of the "name of [every] individual known to be a minor" from every "filing with the court." Fed. R. Civ. P. 5.2(a). Plaintiff did not comply with this requirement in filing, inter alia, the Application, Complaint, and Supplement. (See Docket Entries 1-3, 6.) This failing provides grounds to strike Plaintiff's noncompliant materials and require her to refile them with the appropriate redactions. See Powell v. Williams, No. 5:14-cv-282, 2014 WL 3809964, at *2 (E.D.N.C. July 14, 2014), recommendation adopted, 2014 WL 3809956 (E.D.N.C. Aug. 1, 2014). Nevertheless, in the interests of judicial efficiency, see id., the Court (per the undersigned) orally directed the Clerk's Office to redact the minors' names from the affected filings. The Court hereby memorializes that directive, which applies to Plaintiff's

Application, Complaint and exhibits, Civil Cover Sheet, and Supplement. (Docket Entries 1-3, 6.)

Plaintiff's filings also contain sensitive medical information and identifying and/or explicit photographs of the minors. (See Docket Entries 2-1, 6.) To protect the privacy of the non-party minors, the Court orally directed the Clerk's Office to place those materials under seal. The Court now reaffirms that order.

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "This right of access to court records is not absolute, however. The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Prior to granting a request to seal materials, a court should provide notice and an opportunity for objections to sealing. See id. Nevertheless, "[t]he court may temporarily seal the documents while the motion to seal is under consideration so that the issue is not mooted by the immediate availability of the documents." Id. at 235 n.1. Moreover, in appropriate circumstances, an opportunity to object to a sealing order may satisfy the notice requirement. See Baltimore Sun Co. v. Goetz, 886 F.2d 60, 65 (4th Cir. 1989) ("Since the application and issuance of a warrant are necessarily closed to press and public,

notice can be given by docketing the order sealing the documents. If someone desires to inspect the papers, an opportunity must be afforded to voice objections to the denial of access."); see also United States v. Fretz, No. 7:02-cr-67-1, 2012 WL 1655412, at *2-3 (E.D.N.C. May 10, 2012) ("[Non-party movant] correctly observes that this court did not strictly comply with the[ sealing] requirements when ruling on the [parties'] Joint Motion to Seal. Accordingly, the court will do so now when considering [movant's] Motion to Unseal.").

"[S]afeguarding the physical and psychological well-being of a minor [qualifies as] a compelling [interest]" that can outweigh the public's right of access. Globe Newspaper Co. v. Superior Court for the Cty. of Norfolk, 457 U.S. 596, 607-08 (1982). Hence, "[c]ourts have found a compelling government interest in sealing sensitive medical or other personal information, especially when relating to minors." Interstate Fire & Cas. Co. v. Dimensions Assurance Ltd., Civ. Action No. 13-3908, 2014 WL 6388334, at *2 (D. Md. Nov. 13, 2014) (collecting cases). A minor's non-party status heightens the justification for sealing. See, e.g., Johnson v. City of Fayetteville, No. 5:12-cv-456, 2014 WL 7151147, at *11 (E.D.N.C. Dec. 11, 2014) ("[F]ederal courts have found that the need to keep personal health information confidential may justify sealing certain documents. This is especially so where the medical records are of third parties, or are not central to the disposition

of a case." (citation omitted)); <u>Interstate Fire</u>, 2014 WL 6388334, at *2 ("To protect the privacy of the child, who is not a party to this action, the [c]ourt may find it proper to redact sensitive information.").

Between June 2, 2017, and June 20, 2017, Plaintiff submitted more than one hundred pages of material to the Court, including one medical report and ten photographs of the minors. (<u>See</u> Docket Entries 1-6.) In June 2017, pursuant to the Court's directive, the Clerk's Office placed the medical report and photographs under seal and identified such sealing in the version of the filings available on the public docket. (<u>See, e.g.</u>, Docket Entry 2-1 at 5 ("FILED UNDER SEAL MEDICAL RECORDS (The court instructed Clerk's Office place records under seal.)" (emphasis in original)), 19 ("FILED UNDER SEAL PICTURE OF CHILD (The court instructed Clerk's Office place under seal.)" (emphasis in original)).) Thus, both the parties and the public have possessed notice of the sealing directive since June 2017, but have not contested the sealing. (<u>See</u> Docket Entries dated June 2, 2017, to present.) Accordingly, the Court finds that all interested persons have received "notice of the request to seal and a reasonable opportunity to challenge the request," <u>Virginia Dep't of State Police v. Washington Post</u>, 386 F.3d 567, 576 (4th Cir. 2004). The Court further finds that a compelling interest in protecting the minors' privacy outweighs the public's right of access to these materials, particularly given

that these photographs and records do not affect the disposition of this case. The Court also concludes that, given the nature of these materials, no lesser alternative to sealing, such as redaction, would adequately protect the minors. Finally, the Court finds that sealing only the medical records and photographs, rather than the entire Supplement and all exhibits to the Complaint, narrowly tailors the sealing order to the compelling interest at stake here.

The Court will therefore maintain under seal the minors' photographs and medical records.

### **CONCLUSION**

Res judicata, the domestic relations exception, and <u>Younger</u> abstention render frivolous Plaintiff's claims. In addition, the names, medical information, and photographs of the minors contained in Plaintiff's filings remain subject to sealing and redaction.

**IT IS THEREFORE ORDERED** that Plaintiff's Application (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS FURTHER ORDERED** that the minors' photographs (Docket Entry 2-1 at 19, 22, 23, 30; Docket Entry 6 at 3-8) and medical report (Docket Entry 2-1 at 5) shall remain **SEALED**. The Clerk shall redact the minors' names from the Application (Docket Entry 1), Complaint (Docket Entry 2) and exhibits (Docket Entry 2-1),

Civil Cover Sheet (Docket Entry 3), and Supplement (Docket Entry 6).

**IT IS RECOMMENDED** that this action be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) for being frivolous.

This 15th day of September, 2017.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
